# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

SEAN MICHAEL VEAL,

    Defendant-Appellant.

UNPUBLISHED
April 18, 2017

No. 329651
Wayne Circuit Court
LC No. 14-009360-01-FC

---

Before: FORT HOOD, P.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of carjacking, MCL 750.529a, unlawfully driving away an automobile (UDAA), MCL 750.413, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to concurrent terms of 9 to 20 years in prison for the carjacking conviction and two to five years in prison for the UDAA conviction, which were to be served consecutively to a two-year prison term for the felony-firearm conviction. We affirm.

This case arises from the carjacking of the victim, Roderick Ford. Defendant first argues that he was denied the effective assistance of counsel because defense counsel failed to impeach Ford, the prosecutor's only witness, with his preliminary examination testimony. We disagree.

The question whether defense counsel rendered ineffective assistance is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to the effective assistance of counsel. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews the trial court's findings of fact for clear error. *Trakhtenberg*, 493 Mich at 47. Questions of constitutional law are reviewed de novo. *Id*. Because the trial court did not hold an evidentiary hearing on the issue, our review is limited to errors apparent on the record. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008). To establish ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. at 51.

Defendant calls attention to four instances where, he argues, defense counsel should have impeached Ford's trial testimony with his preliminary examination testimony. First, defendant claims that defense counsel should have impeached Ford with Ford's preliminary examination testimony regarding which perpetrator held a gun to his head and ordered him out of the car during the carjacking. At trial, Ford testified that defendant appeared at his car window and demanded that Ford get out of the car. Ford further testified that a second man pointed a gun at his temple and ordered him out of the car, while defendant pointed a gun at Ford's chest. At the preliminary examination, Ford testified that it was defendant, rather than the second man, who held a gun to his head and ordered him out of the car.

Decisions regarding what evidence to present and how to question witnesses are generally matters of trial strategy, which this Court will not second-guess. *Horn*, 279 Mich App at 39. Ford's testimony at trial was generally consistent with his preliminary examination testimony. At both proceedings, Ford testified that defendant approached the car with a gun, pointed the gun at him, and ordered him out of the car. Given the general consistency in Ford's testimony, as well as Ford's testimony that there was "[n]o doubt in [his] mind" that defendant was one of the perpetrators, defense counsel reasonably may have concluded that the impeachment would not have helped defendant's case to any significant degree. Furthermore, defendant has not shown a reasonable probability that, but for defense counsel's failure to impeach Ford with the prior testimony, the result of the proceeding would have been different. Ford consistently testified that defendant pointed a gun at him and ordered him out of the car. Therefore, we conclude that there is not a reasonable probability that, but for defense counsel's conduct, the result of the proceeding would have been different. See *Trakhtenberg*, 493 Mich at 51.

Second, defendant argues that defense counsel should have impeached Ford with his preliminary examination testimony regarding the types of guns used during the carjacking. Ford testified at trial that defendant's gun "seemed like a .380 or a Glock," and that the second man's gun "looked like a .357 revolver." At the preliminary examination, Ford testified that the gun defendant was holding "looked like a Glock or a .9 millimeter," and that the second man's gun "[l]ooked like a .380." While there was some inconsistency in Ford's testimony, the inconsistency was not significant. The exact type of guns used by the perpetrators was not an important detail in the case. Furthermore, Ford's testimony that the guns "looked like" a certain type of gun indicated that Ford was not certain regarding his identification of the guns. This explains the minor discrepancy in his testimony. Under these circumstances, defendant has not shown that defense counsel's failure to impeach Ford with the prior testimony amounted to ineffective assistance of counsel.

Third, defendant argues that defense counsel should have impeached Ford with his preliminary examination testimony regarding when he viewed the photographic lineup. Ford testified at trial that he participated in a photo lineup three days after the carjacking. At the preliminary examination, Ford testified that he viewed the photo lineup "[p]robably about a week after" the incident. Again, defendant has not shown that defense counsel's failure to impeach Ford with this minor difference in his testimonies amounted to ineffective assistance of counsel. Ford's preliminary examination testimony indicated that he was estimating the amount of time that passed between the incident and his viewing of the photo array. We cannot conclude that defense counsel's failure to question Ford regarding the lineup constituted deficient performance

or that there is a reasonable probability that had defense counsel questioned Ford regarding this minor inconsistency, the result of the proceeding would have been different.

Finally, defendant argues that defense counsel should have impeached Ford with his failure to mention a third perpetrator during his preliminary examination testimony. At trial, Ford testified that, before defendant and the second man drove off in the car, a third man appeared and jumped into the back seat of the car. Ford did not mention a third person during his preliminary examination testimony. At the preliminary examination, Ford was not questioned regarding the appearance of a third person, and he did not deny the existence of a third person, but merely offered no testimony regarding a third person. The appearance of the third person was not an important fact, and there was no real inconsistency in the testimony because Ford merely omitted any reference to the third person at the preliminary examination. Therefore, defense counsel's decision not to impeach Ford did not constitute deficient performance. Furthermore, defendant has not shown that there was a reasonable probability that the result of the proceeding would have been different had Ford been impeached on this basis. Accordingly, defendant has not shown that defense counsel's failure to impeach Ford with the lack of prior testimony regarding the third person amounted to ineffective assistance of counsel.

Defendant next argues that defense counsel was ineffective because he failed to allocute on defendant's behalf at sentencing. We disagree.

"The decision to address the court at sentencing is a tactical one." *People v Arney*, 138 Mich App 764, 766; 360 NW2d 291 (1984). "A difference of opinion as to trial tactics does not amount to ineffective assistance of counsel." *Id.* In this case, at the beginning of the sentencing hearing, the sentencing judge indicated that he intended to sentence defendant to nine years in prison, which was the very bottom of the 108 to 180 months recommended minimum sentence range. Defense counsel reasonably may have believed that he could not have improved defendant's position through allocution. This Court should not second-guess defense counsel's reasonable, strategic decision not to allocute on defendant's behalf. See *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). Furthermore, defendant has not shown a reasonable probability that allocution would have resulted in a lower sentence. Accordingly, defendant has not shown that he was denied the effective assistance of counsel.

Defendant presents additional issues on appeal in his Standard 4 brief. Defendant first argues in his Standard 4 brief that he is entitled to a new trial because the trial judge, sitting as the trier of fact, was informed by the prosecutor that defendant had been charged with an unrelated offense that occurred on the same day as the offenses for which defendant was being tried. We disagree.

We review this unpreserved, nonconstitutional issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). While the trial judge should not have been informed that defendant was charged with another offense that occurred on the same day as the instant offenses, we are not convinced that any error affected the outcome of the proceedings. Error that warrants reversal in a jury trial may not necessarily warrant reversal in a bench trial. See *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). Furthermore, "[a] judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly

admitted at trial." *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001) (citation and quotation marks omitted). Given these principles and the brief nature of the prosecutor's comments, we cannot conclude that any error amounted to plain error that affected defendant's substantial rights. Furthermore, the trial judge clarified that the prosecution could not tell him that information, and the prosecutor did not discuss the unrelated offense further. Therefore, we conclude that defendant fails to establish plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

Defendant next argues in his Standard 4 brief that he is entitled to resentencing because he was denied his right to allocute at the sentencing hearing. We disagree.

We review this unpreserved issue for plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763. MCR 6.425(E)(1)(c) provides that the sentencing court must, on the record, "give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence." "[T]his court rule means that the trial court must make it possible for a defendant who wishes to allocute to be able to do so before the sentence is imposed." *People v Petit*, 466 Mich 624, 628; 648 NW2d 193 (2002). In order to provide a defendant with an opportunity to allocute, however, the court need not specifically ask the defendant whether he or she has anything to say before sentencing. *Id.* "The defendant must merely be given an opportunity to address the court if he chooses." *Id.* In *Petit*, the Michigan Supreme Court concluded that the sentencing court complied with the court rule merely by asking at the sentencing hearing whether there was "anything further." *Id.* at 629. In the present case, after discussing whether defendant would plead guilty to an unrelated armed robbery charge, the sentencing judge asked, "Anything else before I sentence him?" Defendant had an opportunity to address the court at this time. Therefore, defendant has not shown that he was denied an opportunity to allocute at the sentencing hearing.

Defendant next argues in his Standard 4 brief that he is entitled to resentencing before a different judge because the sentencing judge considered his refusal to admit his guilt when determining his sentence. We disagree.

Because defendant failed to preserve this issue for review, we review the issue for plain error that affected substantial rights. See *Carines*, 460 Mich at 763. " 'A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt.' " *People v Payne*, 285 Mich App 181, 193-194; 774 NW2d 714 (2009) (citation omitted).

> To determine whether sentencing was improperly influenced by the defendant's failure to admit guilt, this Court focuses on three factors: "(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." [*People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007) (citation omitted).]

At the hearing, the court discussed defendant's sentence in the instant case and whether defendant would accept a plea offer in an unrelated armed robbery case. It is not clear from the

sentencing transcript whether defendant was referring to the convictions in the instant case or the unrelated armed robbery charge when he stated, "I just want you to know that I really did not do the case." Even if defendant was referring to the charges in the instant case, however, there is nothing in the record to indicate that the sentencing judge attempted to get defendant to admit his guilt to the carjacking, UDAA, and felony-firearm charges. Furthermore, we cannot conclude that, had defendant affirmatively admitted his guilt, his sentence would have been less severe. Defendant's minimum sentence of nine years in prison was at the very bottom of the sentencing guidelines minimum recommended sentence range of 108 to 180 months in prison, and the trial judge stated at the beginning of the sentencing that he intended to sentence defendant to a minimum sentence of nine years' imprisonment. We therefore find no error in the court's determination of defendant's sentence.

Finally, defendant argues in his Standard 4 brief that the sentencing judge improperly considered defendant's refusal to plead guilty in an unrelated case when determining his sentence in the instant case. We disagree.

Because defendant failed to preserve this issue for appellate review, we review the issue for plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763. Contrary to defendant's argument, a review of the record does not show that the trial court considered defendant's refusal to plead guilty in the unrelated case when determining his sentence in the instant case. At the beginning of the sentencing hearing, the judge indicated his intention to sentence defendant to nine years in prison in the instant case, which was the very bottom of the recommended minimum sentence range of 108 to 180 months in prison. After the parties discussed the possible plea in an unrelated armed robbery case and defendant indicated that he was not at the scene of the unrelated armed robbery, the sentencing court still imposed a nine-year minimum sentence in the instant case. Accordingly, defendant has not shown that the sentencing court considered his refusal to admit his guilt in the unrelated case when determining his sentence in the instant case.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra